**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **JENNIFER W. LOPEZ,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No.** |
| ) | |
| ) | |
| **CENTER FOR THE ADVANCEMENT** ) | |
| **OF SCIENCE IN SPACE, INC.** ) | |
| **JOSEPH VOCKLEY, and** ) | |
| **MELODY KUEHNER,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JENNIFER W. LOPEZ (hereinafter "Plaintiff"), by and through the undersigned counsel, hereby sues the Defendants, CENTER FOR THE ADVANCEMENT OF SCIENCE IN SPACE, INC. (hereinafter, "CASIS"), JOSEPH VOCKLEY, (hereinafter "Vockley"), and MELODY KUEHNER, (hereinafter "Kuehner") and states as follows:

## INTRODUCTION

This is an action by Plaintiff against Defendant CASIS, her former employer, Defendant Vockley and Defendant Kuehner, for defamation *per se* and against Defendant CASIS for unpaid overtime wages under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"). Plaintiff seeks all wages due to her under the law, liquidated damages where applicable, and her reasonable attorney's fee and costs.

## JURISDICTION

1.      This action arises under the FLSA, 29 U.S.C. § 201, *et seq.*  This Court has jurisdiction over claims filed under the FLSA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.      This action arises under Florida Statute Section 770 for Defamation *per se* against Defendants. This action arises under Florida common law for Tortious Interference against Defendant Kuehner.

## VENUE

3.      The venue of this Court over this controversy is proper based upon 28 U.S.C. § 1391(b)(1) and (2) as the Defendants reside in and a substantial part of the events or omissions which transpired occurred within Brevard County, Florida, a county within this Court's venue.

## THE PARTIES

4.      Defendant CASIS is a Florida not-for-profit corporation with its principal place of business being 6905 North Wickham Road, Suite 500, Melbourne, Florida 32940.

5.      Defendant Vockley, was, at all relevant times hereto, a resident of Brevard County, Florida.

6.      Defendant Kuehner is a resident of Brevard County, Florida.

7.      Plaintiff is a resident of Manhattan County, New York, but was, at all times relevant hereto, an "employee" of the Defendant CASIS as that term is defined by 29 U.S.C. § 203(e).

8.      The Defendant CASIS was, at all times relevant hereto, Plaintiff's "employer" as that term is defined by 29 U.S.C. § 203(d).

9.      Plaintiff was, at all times relevant to the violations of the FLSA, through the performance of her job duties for Defendant CASIS, engaged in commerce as defined by 29 U.S.C. § 203(b).

10.      Defendant CASIS is and was, at all times relevant hereto, an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1).

11.      Upon information and belief, Defendant CASIS, at all times material hereto, had annual gross sales or business of no less than $500,000.00 and was engaged in interstate commerce or in the production of goods for interstate commerce as defined in §§ 3(r) and 3(s) of the FLSA, 29 U.S.C. § 203(r) and § 203(s).

12.      Plaintiff has retained the law firm of Wilson McCoy, P.A. to represent her in this matter and has agreed to pay said firm a reasonable attorneys' fee for its services.

## FACTUAL ALLEGATIONS

13.      This action arises, in part, from a willful misclassification of Plaintiff's position of Commercial Innovation Manager as exempt from the overtime requirements of the FLSA and Defendant CASIS's deliberate actions to not pay Plaintiff overtime wages.

14.      Under the provisions of the Fair Labor Standards Act ("FLSA"), employees are required to receive overtime wages at a rate of one and one-half times their regular hourly rate for hours they work in excess of forty during any particular workweek unless they qualify for an exemption under the FLSA.

15.      Defendant CASIS has a cooperative agreement with National Aeronautical and Space Administration ("NAS").  As part of that agreement, Defendant CASIS is responsible for managing and maximizing the value of the International Space Station U.S. National Laboratory (the "ISS National Lab") to the nation by developing and managing a diversified Research &

Development portfolio based on U.S. national needs for basic and applied research and by using the ISS National Lab as a venue for Science, Technology, Engineering and Mathematics ("STEM") educational activities.

16.     Plaintiff began working for Defendant CASIS on or about July 20, 2015 when she was hired as a Commercial Innovation Manager.

17.     Plaintiff was initially hired by Defendant CASIS on a temporary basis.

18.     The primary job duty of the Commercial Innovation Manager position held by Plaintiff was to develop a pipeline of potential corporate customers and to promote the commercial use of the ISS National Lab.

19.     As a Commercial Innovation Manager, Plaintiff was responsible for promoting and selling space and time for experiments to be conducted aboard the International Space Station.

20.     As a Commercial Innovation Manager, Plaintiff's job duties included educating potential clients about the ISS National Lab.

21.     Plaintiff learned about the ISS National Lab primarily through Defendant CASIS.

22.     While performing sales for Defendant CASIS, Plaintiff did not have a degree in science. Instead, Plaintiff had a degree in Communications Studies.

23.     Plaintiff is not a scientist.

24.     Defendant CASIS did not consider Plaintiff a scientist.

25.     Plaintiff's sales work did not require advanced knowledge of a field of science.

26.     Plaintiff's sales work did not require her to consistently exercise discretion and judgment in a field of science.

27.     As a Commercial Innovation Manager, Plaintiff's job duties included research on and about potential organizations which could become clients of the Defendant CASIS.

28.     As a Commercial Innovation Manager, Plaintiff's job duties included identifying client contacts to whom she could discuss the benefits of utilizing the ISS National Lab for commercial purposes.

29.     As a Commercial Innovation Manager, Plaintiff's job duties included holding teleconferences with potential clients.

30.     As a Commercial Innovation Manager, Plaintiff's job duties included creating and performing presentations for potential clients.

31.     As a Commercial Innovation Manager, Plaintiff's job duties included taking project proposals from prospective clients to Defendant CASIS for its review, contract negotiation, and approval.

32.     As a Commercial Innovation Manager, Plaintiff was assigned promotional and sales goals by Defendant CASIS.

33.     As a resident of New York, Plaintiff was permitted to work remotely from her home while working for Defendant CASIS.

34.     Plaintiff regularly and customarily performed her primary job duties as a Commercial Innovation Manager from her home in New York.

35.     Although Plaintiff did make some promotional and sales presentations in person, Plaintiff primarily used the telephone, email, and Internet to promote the ISS National Lab and make sales to customers.

36.     In or about January 2016, Plaintiff transitioned into a permanent Commercial Innovation Manager position with Defendant CASIS.

37. Plaintiff was continuously employed by Defendant CASIS as a full-time Commercial Innovation Manager from January 2016 through her separation of employment with Defendant CASIS on December 21, 2018.

38. At all times material to this Complaint, Plaintiff duties as a Commercial Innovation Manager for Defendant CASIS remained the same.

39. At all times material hereto, Plaintiff was paid by Defendant CASIS on a salary basis.

40. In 2016, Plaintiff was paid an annual base salary of $120,000.00 per year by Defendant CASIS.

41. In 2017, Plaintiff was paid an annual base salary of $120,000.00 per year by Defendant CASIS.

42. In 2018, Plaintiff was paid an annual base salary of $123,000.00 per year by Defendant CASIS.

43. Plaintiff's salary remained consistent week to week throughout her employment with Defendant CASIS.

44. As a Commercial Innovation Manager, Plaintiff routinely worked between 55 and 60 hours each week for Defendant CASIS.

45. As a Commercial Innovation Manager, Plaintiff routinely worked between 15 and 20 hours per week in overtime for Defendant CASIS.

46. As a Commercial Innovation Manager, Plaintiff routinely worked between 60 and 70 hours each week when she was required to travel on behalf of Defendant CASIS

47. As a Commercial Innovation Manager, Plaintiff routinely worked between 20 and 30 hours per week in overtime when she was required to travel on behalf of Defendant CASIS.

48.     Plaintiff's direct supervisor and management were aware of Plaintiff working in excess of 40 hours per week for Defendant CASIS.

49.     Since the inception of her employment with Defendant CASIS through the date of her termination, Plaintiff was never compensated one and one-half times her regular rate of pay for hours worked above 40 in a work week.

50.     Plaintiff was not required by Defendant CASIS to accurately record all hours worked on behalf of Defendant CASIS.

51.     Defendant CASIS did not keep accurate records of the hours worked by Plaintiff.

52.     Plaintiff's hours of work may be evidenced, in part, by using Defendant CASIS's computer log in records, cell phone records, emails, text messages, calendaring system, and other documents created with and on Defendant CASIS's computer systems.

53.     Plaintiff followed Defendant CASIS's guidelines and supervision when fulfilling her job duties.

54.     During her employment with Defendant CASIS, Plaintiff was performing non-exempt work.

55.     Plaintiff was required to follow all company procedures and policies without any deviation.

56.     If Plaintiff was to deviate from any procedures or contracts, she was required to first receive approval from Defendant CASIS.

57.     Plaintiff was required to seek approval from Defendant CASIS and supervisors for any decision she would make that might affect the company or contracts.

58.     Defendant CASIS knowingly and willfully violated the overtime provisions of the FLSA by misclassifying the position Plaintiff held, Commercial Innovation Manager, with Defendant CASIS, as exempt from the overtime provisions of the FLSA.

59.     Based on her duties, Plaintiff's position did not qualify for any of the overtime exemptions to the FLSA.

60.     During Plaintiff's employment with Defendant CASIS, Plaintiff's duties did not qualify for the administrative exemption under the FLSA.

61.     Plaintiff was not exempt under the administrative exemption.

62.     Plaintiff applied well-established techniques, procedures or specific standards of Defendant CASIS when performing her duties.

63.      Plaintiff was not permitted to exercise her discretion or use independent judgment with respect to matters of significance when performing her duties for Defendant CASIS.

64.     Plaintiff did not work directly related to assisting with the running or servicing of the business for Defendant CASIS.

65.     Plaintiff did not serve as an advisor to or consultant to Defendant CASIS's clients.

66.     Plaintiff's primary duties included following the direct procedures of Defendant CASIS and supervisors when fulfilling her job duties.

67.     Plaintiff did not exercise discretion and independence in matters of significance when performing her job duties for Defendant CASIS.

68.      Plaintiff did not have authority to, nor did she formulate, affect, interpret, or implement management policies or operating practices of Defendant CASIS.

69.     Plaintiff did not have authority to, nor did she perform, work which substantially effects Defendant CASIS's operations.

70.     Plaintiff did not have authority to personally commit the Defendant CASIS to matters that had significant financial impact on Defendant CASIS.

71.     Plaintiff did not have the authority to waive or deviate from established policies and procedures without prior approval from Defendant CASIS.

72.     Plaintiff did not have authority to negotiate and personally bind the company on matters of significance.

73.     Plaintiff did not have the ability or responsibility to provide consultation or expert advice to management of the Defendant CASIS.

74.     Plaintiff did not have the ability or responsibility to investigate and resolve matters of significance on behalf of management for Defendant CASIS.

75.     Plaintiff did not have the authority to represent Defendant CASIS in handling complaints, arbitrating disputes, and resolving grievances.

76.     Plaintiff did not perform any quality control, nor did she work or develop any performance or procedural policies of Defendant CASIS.

77.     During Plaintiff's employment with Defendant CASIS, the Plaintiff's duties as a Commercial Innovation Manager did not qualify for the executive exemption under the FLSA.

78.     Plaintiff did not supervise the equivalent of at least two or more full-time employees as part of her duties for Defendant CASIS.

79.     Plaintiff did not manage any employees for Defendant CASIS.

80.     Plaintiff did not set or adjust the rates of pay and hours of work for Defendant CASIS's employees.

81.     Plaintiff did not have the authority to hire or fire employees from Defendant CASIS.

82.    Plaintiff did not manage the enterprise or manage a customarily recognized department or subdivision of the Defendant CASIS.

83.    During Plaintiff's employment with Defendant CASIS, Plaintiff's duties as a Commercial Innovation Manager did not qualify for the outside sales exemption under the FLSA.

84.    Plaintiff was not customarily and regularly engaged away from the employer's place of business in performing her primary duties for Defendant CASIS.

85.    Plaintiff customarily and regularly worked from her home office in New York.

86.    Plaintiff's home office in New York was where she spent the majority of her working hours as Commercial Innovation Manager for Defendant CASIS.

87.    Plaintiff's home office in New York was an extension of Defendant CASIS's business and is considered a place of business for Defendant CASIS.

88.    Plaintiff only met the salary requirement for the professional exemption.

89.    Apart from salary, Plaintiff did not meet any other requirement for the professional exemption.

90.    Plaintiff only met the salary requirement for the executive exemption.

91.    Apart from salary, Plaintiff did not meet any other requirement for the executive exemption.

92.    Plaintiff only met the salary requirement for the administrative exemption.

93.    Apart from salary, Plaintiff did not meet any other requirement for the administrative exemption.

94.    During her employment with Defendant CASIS as a Commercial Innovation Manager, Plaintiff routinely worked workweeks in excess of 40 hours in a week.

95.     Defendant CASIS never paid Plaintiff overtime wages for any hours Plaintiff worked in excess of 40 in a workweek.

96.     Plaintiff did not meet all requirements for the highly compensated exemption.

97.     Upon information and belief, Defendant CASIS willfully and illegally classified Plaintiff as exempt from the overtime wage provisions of the FLSA.

98.     The job duties performed by Plaintiff as Commercial Innovation Manager are such that according to the provisions of the FLSA and the Code of Federal Regulations ("CFR"), Plaintiff should have been classified as a non-exempt employee and entitled to overtime pay for hours worked in excess of 40 in a workweek.

99.     Defendant CASIS knew or should have known that its former and current policies regarding payment of overtime wages as described herein violated the FLSA as they pertained to Plaintiff.

100.    Defendant CASIS knew or should have known that it misclassified Plaintiff as an exempt employee under the FLSA.

101.    As an employer, Defendant CASIS is responsible for the unlawful conduct and policies described herein, including the failure to comply with the provisions of the FLSA as applied to Plaintiff during the time she served as Commercial Innovation Manager.

102.    Defendant CASIS did not seek or rely upon the advice of a Department of Labor opinion letter with respect to Plaintiff's classification as an exempt employee.

103.    The actions of Defendant CASIS in deliberately failing to pay Plaintiff overtime wages were done for the purpose of enriching and benefitting Defendant CASIS.

104.    As a result of the actions of Defendant CASIS in not paying legally required overtime wages to Plaintiff, Plaintiff has suffered economic damages.

105.    Notably, during her employment as Commercial Innovation Manager, Plaintiff helped secure multi-million-dollar deals with corporations such as Apple, IBM, and Target on behalf of Defendant CASIS.  In fact, Plaintiff's deal with Apple resulted in an investment of $1.225 million in unrestricted dollars, which was the largest single commercial sponsorship ever for CASIS.

106.    Plaintiff was encouraged by her leadership and Management of Defendant CASIS to pursue such commercial opportunities/partnerships.  As a result, Plaintiff was described by her peers and leadership as a "rock star" and a "rainmaker."

107.    Upon information and belief, in or about August 2018, Defendant CASIS received a letter issued on behalf of NASA in which NASA requested a strategic pause in certain CASIS activities so that NASA could establish an independent review of the Cooperative Agreement and ensure that the CASIS and NASA were on mission and appropriately resources to produce breakthroughs that improve lives.

108.    Based upon the letter received from NASA, the Defendants knew that their actions and management of Defendant CASIS were under heavy scrutiny by NASA.

109.    Due to Plaintiff's overall achievements and relationships in her field, Plaintiff was recognized by the National Geographic Society ("National Geographic") and provided the award of an "Emerging Explorer."

110.    As part of "Emerging Explorer" award,  Plaintiff received a monetary honorarium which was disclosed to Defendant CASIS through a Conflict of Interest Form per company policy.

111.    Because of the Emerging Explorer Award, Plaintiff was asked to participate in a podcast, "You're the Expert," which was a collaboration with National Geographic.

112.    Plaintiff's supervisors were aware of the podcast and encouraged Plaintiff to take part in the podcast.

113.    Plaintiff flew to Washington, D.C., where the podcast was recorded in front of a live audience at National Geographic on a weekend.

114.    Plaintiff received an honorarium for her attendance and participation in the podcast.

115.    Because the podcast was comedic in nature, the host and comedians intentionally (and sometimes unintentionally) embellished Plaintiff's credentials to contrast her with the entertainer, "Jennifer Lopez" who is also known as "J-Lo." Plaintiff understood these to be jokes and because the podcast was live, unscripted, and done in front of an audience, she did not correct the jokes of hosts/comedians.

116.    Moreover, Plaintiff was told that much of which was recorded would not be published and would likely be edited before publication.

117.    The podcast episode, which was originally titled, "Dr. Jennifer Lopez and the International Space Station", was released to the public on December 6, 2018.

118.    Plaintiff was unaware of the name National Geographic had given to the podcast prior to its publication.

119.    After learning of the podcast, Defendant Kuehner interrupted Plaintiff while she was on vacation in London to discuss the podcast.

120.    Defendant Kuehner curtly indicated that she took issue with the fact that the host referred to Plaintiff as "Dr." Lopez and requested Plaintiff to have that portion of the podcast edited/removed.

121.    Plaintiff advised Defendant Kuehner that she wasn't aware of the "Dr." reference, but she was told that she would have the opportunity to review the content before it was published.

122.    Plaintiff agreed to contact the podcast producers the following morning on Friday, December 21, 2018 to have the podcast corrected immediately or to remove the podcast entirely if it was somehow detrimental to Defendant CASIS.

123.    Defendant Kuehner then advised that she also took issue with Plaintiff's education and name.

124.    Defendant Kuehner accused Plaintiff of making "false misrepresentations" and falsely "using" her Hispanic last name of Lopez for public gain so she would be likened to the celebrity Jennifer Lopez (aka "J-Lo").

125.    Defendant Kuehner also chastised Plaintiff for only having a "Communications" degree and no advanced degrees in science.

126.    Defendant Kuehner then asked Plaintiff she was as receiving payments/paychecks from National Geographic, stating further that if Plaintiff had done so, Defendant CASIS would be in big trouble.

127.    Defendant Kuehner's questions made little sense, as she had already disclosed that she received honorariums from National Geographic and listed same in her Conflict of Interest Form.

128.    Ultimately, Plaintiff was not afforded the opportunity to correct Defendant Kuehner's concerns with the podcast.  Instead, when Plaintiff attempted to do so on December 21, 2018, she was already advised by the podcast producer that Defendant Kuehner had already contacted him.

129.    On or about December 21, 2018, Defendant Kuehner contacted the podcast producer for National Geographic.

130.    During Defendant Kuehner's written and oral conversation with the National Geographic Society, Defendant Kuehner made numerous defamatory statements about Plaintiff.

131.    Plaintiff was terminated on December 21, 2018.

132.    Plaintiff was told that she was terminated for allegedly participating in an unauthorized event and allowing herself to be misrepresented as a scientist, technologist, NASA expert, DR./PhD, and federal employee among other things, and because she was "deceptive" when asked if she received compensation for her appearance at the podcast.

133.    Notably, Defendant Kuehner did not follow established policies of Defendant CASIS when investigating or terminating Plaintiff.

134.    Defendant Kuehner ignored Plaintiff's correctly completed Conflict of Interest Form and went outside CASIS' normal investigative and disciplinary procedures to help support the termination of Plaintiff.

135.    At no time during her employment with Defendant CASIS did Plaintiff ever tell or represent to anyone that she was a scientist.

136.    At no time during her employment with Defendant CASIS did Plaintiff ever tell or represent to anyone that she was a NASA expert.

137.    At no time during her employment with Defendant CASIS did Plaintiff ever tell or represent to anyone that she was a DR./PhD.

138.    At no time during her employment with Defendant CASIS did Plaintiff ever tell or represent to anyone that she was a federal employee.

139.    Defendant Kuehner used false information about Plaintiff and relayed it to others at Defendant CASIS to support her termination recommendation of Plaintiff.

140.     Notably, other employees who have not reported possible conflicts on their Conflict of Interest Forms or who have disclosed such potential conflicts and received compensation and/or honorariums have not been terminated like Plaintiff.

141.     Since Defendant Kuehner's contact with the National Geographic Society, Plaintiff's beneficial business relationship with National Geographic Society has been harmed and Plaintiff has rarely been asked to continue work with the National Geographic Society.

142.     Upon information and belief, Defendant Vockley and Defendant CASIS supported the termination of Plaintiff as they believed it would help alleviate pressure and/or scrutiny from NASA with respect to its operations.  In other words, Defendant Vockely and Defendant CASIS believed they could make an example of Plaintiff and show NASA that Defendant CASIS was taking "corrective action" and trying to get back "on mission" by eliminating purportedly rogue employees who pursued commercial deals/partnerships which were inopposite of the intent of the Cooperative Agreement with NASA.

143.     On January 8, 2019, Defendant Vockley, on behalf of Defendant CASIS, formally announced Plaintiff's termination during a company-wide meeting. Defendant Vockley and Defendant CASIS's decision to publicly relay the alleged basis for Plaintiff's termination to all employees, including to NASA and other non-CASIS employees, was not customary of Defendant CASIS when terminating an employee.

144.     Approximately 30 employees of Defendant CASIS, including those who were non-managerial personnel, and others employed by NASA and outside the organization, were present during the announcement of Plaintiff's termination.  Upon information and belief, additional witnesses to Defendant Vockley's announcement may have been present via teleconference.

145.    During the January 8, 2019 meeting, Defendant Vockley, the President and Executive Director for Defendant CASIS, stated that Plaintiff was "absolutely terminated on December 21st for cause, because she lied and misrepresented herself in such a way to jeopardize everyone's jobs and put the entire organization at risk."

146.    Defendant Vockley further indicated that Plaintiff lied and would not verify her last name and/or marital status and misrepresented same to Defendant CASIS.

147.    Defendant Vockley also stated that in "National Geographic podcast [Ms. Lopez] represented herself as a PhD level Scientist … and received $10,000 from National Geographic including accommodations and travel compensation."

148.    Defendant Vockley also stated that Plaintiff "brought in projects of no scientific value" and that Defendant CASIS "cannot tolerate this broad deceit which is why we terminated her effective immediately."

149.    Plaintiff has had to retain the services of Wilson McCoy, P.A. to and she is required to pay Wilson McCoy, P.A. reasonable attorney fees for such services to correct the wrongs which have been done to her.

## COUNT I
## VIOLATION OF THE OVERTIME PROVISIONS OF
## THE FAIR LABOR STANDARDS ACT

150.    Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 149, above.

151.    Plaintiff, as Defendant CASIS's employee, was entitled to be paid at the statutory rate of one and one-half times Plaintiff's regular rate of pay for those hours worked in excess of 40 hours per week.

152.   Plaintiff routinely and regularly worked weeks in excess of 40 hours per week for Defendant CASIS.  Defendant CASIS did not pay Plaintiff one and one-half times her regular rate of pay for the hours worked in excess of 40 in a workweek.

153.   Throughout the employment of Plaintiff, the Defendant CASIS has repeatedly and willfully violated Section 7 and Section 15 of the FLSA by failing to compensate Plaintiff at a rate not less than one and one-half times the regular rate at which she was employed for workweeks in excess of 40 hours.

154.   Defendant CASIS knew or should have known that Plaintiff was working more than 40 hours each week.

155.   As a result of Defendant CASIS's intentional, willful, and unlawful acts in refusing to pay Plaintiff one and one-half times her regular rate of pay for each hour worked in excess of forty hours per week throughout her employment, Plaintiff has suffered damages.

156.   Defendant CASIS's conduct was in reckless disregard of the overtime requirements of the FLSA.

157.   Defendant CASIS willfully violated the FLSA.

158.   Plaintiff is entitled to unpaid overtime and an equal amount as liquidated damages as a result of Defendant CASIS's violation of the FLSA.

WHEREFORE, Plaintiff demands a judgment against Defendant CASIS for unpaid overtime wages found to be due and owing; an additional amount equal to the unpaid overtime wages found to be due and owing as liquidated damages; prejudgment interest in the event liquidated damages are not awarded; a reasonable attorney's fee and costs; and such other relief as this Court deems just and equitable.

## COUNT II

18

## DEFAMATION *PER SE* (AGAINST DEFENDANT VOCKLEY)

159.    Plaintiff re-alleges paragraphs 1 through 149 as though fully set forth and incorporated herein.

160.    Upon information and belief, Defendant Vockley made/published false and slanderous post-employment statements about Plaintiff to non-managerial employees of Defendant CASIS as well as individuals who were not employed by Defendant CASIS.

161.    Specifically, Defendant Vockley stated that Plaintiff was "absolutely terminated on December 21st for cause, because she lied and misrepresented herself in such a way to jeopardize everyone's jobs and put the entire organization at risk."

162.    Defendant Vockley further indicated that Plaintiff lied and would not verify her last name and/or marital status and misrepresented same to Defendant CASIS.

163.    Defendant Vockley also stated that in "National Geographic podcast [Ms. Lopez] represented herself as a PhD level Scientist … and received $10,000 from National Geographic including accommodations and travel compensation."

164.    Defendant Vockley also stated that Plaintiff "brought in projects of no scientific value" and that Defendant "cannot tolerate this broad deceit which is why we terminated her effective immediately."

165.    Defendant Vockley's above-alleged statements were false and intended to cause harm to the Plaintiff's professional reputation.

166.    Plaintiff did not lie or misrepresent herself in any way to jeopardize Defendant CASIS or its employees.

167.    Plaintiff did not lie regarding her name and did not misrepresent her name or marital status to Defendant CASIS.

168.   Plaintiff did not represent herself as a PhD level Scientist.

169.   Plaintiff did not receive $10,000 as well as travel and accommodation compensation from National Geographic for her participation in a podcast.

170.   Plaintiff did bring in projects of significant scientific value to Defendant CASIS.

171.   Defendant Vockley made the above-alleged statements knowing they were false or, in the alternative, with reckless disregard for the truth or falsity of such statements.

172.   Defendant Vockley made the above-alleged statements intentionally and deliberately and with malice and the intent of harming Plaintiff's personal and professional reputation.

173.   Defendant Vockley's above-alleged statements are false, malicious, defamatory, and slanderous, and moreover, were published with complete disregard to its harmful effect on Plaintiff's reputation in her profession.

174.   Due to the overwhelming number of witnesses present at the meeting on January 8, 2019 who heard Defendant Vockley's defamatory statements about Plaintiff, Defendant Vockley caused substantial damage to Plaintiff by irreparably harming her professional reputation.

175.   As a direct and proximate result of Defendant Vockley's conduct and defamatory actions, Plaintiff has suffered and continues to suffer damage, including, but not limited to, damage to her personal and professional reputation, embarrassment, pain, humiliation, mental anguish, and has sustained past and future loss of earnings..

176.   Defendant Vockley knew that his statements were false at the time the statements were made but nonetheless made and/or published the statements with an intent to cause ill will, hostility, and intent to harm, thus giving rise to the right to recover punitive damages in order to deter Defendant Vockley from engaging in such conduct in the future.

177.    As the statements made by Defendant Vockley are defamatory per se, injury to the Plaintiff is presumed as a matter of law.

WHEREFORE, Plaintiff demands judgment against Defendant Vockley for compensatory damages, costs, pre and post-judgment interest, punitive damages, and such other and further relief as the Court may deem appropriate under the circumstances.

### COUNT III
### DEFAMATION *PER SE* (AGAINST DEFENDANT KUEHNER)

178.    Plaintiff re-alleges paragraphs 1 through 149 as though fully set forth and incorporated herein.

179.    As alleged above, Defendant Kuehner made slanderous statements and/or false innuendo about Plaintiff to the National Geographic Society.

180.    Defendant Kuehner's above-alleged statements and/or innuendo are false, malicious, defamatory, and slanderous, and moreover, were published with complete disregard to its harmful effect on Plaintiff's reputation in her profession.

181.    Due to the nature of Defendant Kuehner's defamatory statements about Plaintiff, Defendant Kuehner caused substantial damage to Plaintiff by irreparably harming her professional reputation.

182.    As a direct and proximate result of Defendant Kuehner's conduct and defamatory actions, Plaintiff has suffered and continues to suffer damage, including, but not limited to, damage to her personal and professional reputation, embarrassment, pain, humiliation, mental anguish, and has sustained past and future loss of earnings.

183.    Defendant Kuehner knew that her statements and/or innuendo were false at the time the statements and/or innuendo were made but nonetheless made and/or published the statements

with an intent to cause ill will, hostility, and intent to harm, thus giving rise to the right to recover punitive damages in order to deter Defendant Kuehner from engaging in such conduct in the future.

184.    As the statements and/or innuendo made by Defendant Kuehner are defamatory per se, injury to the Plaintiff is presumed as a matter of law.

WHEREFORE, Plaintiff demands judgment against Defendant Kuehner for compensatory damages, costs, pre and post-judgment interest, punitive damages, and such other and further relief as the Court may deem appropriate under the circumstances.

**COUNT IV**
**DEFAMATION *PER SE* (AGAINST**
**DEFENDANT CASIS)**

185.    Plaintiff re-alleges paragraphs 1 through 149 as though fully set forth and incorporated herein.

186.    Upon information and belief, Defendant Vockley made/published false and slanderous post-employment statements about Plaintiff to non-managerial employees of Defendant CASIS as well as individuals who were not employed by Defendant CASIS.  Such comments were made on behalf of Defendant CASIS.

187.    Specifically, Defendant Vockley stated that Plaintiff was "absolutely terminated on December 21st for cause, because she lied and misrepresented herself in such a way to jeopardize everyone's jobs and put the entire organization at risk."

188.    Defendant Vockley further indicated that Plaintiff lied and would not verify her last name and/or marital status and misrepresented same to Defendant CASIS.

189.    Defendant Vockley also stated that in "National Geographic podcast [Ms. Lopez] represented herself as a PhD level Scientist … and received $10,000 from National Geographic including accommodations and travel compensation."

22

190.    Defendant Vockley also stated that Plaintiff "brought in projects of no scientific value" and that Defendant "cannot tolerate this broad deceit which is why we terminated her effective immediately."

191.    Defendant Vockley's above-alleged statements were false and intended to cause harm to the Plaintiff's professional reputation.

192.    Plaintiff did not lie or misrepresent herself in any way to jeopardize Defendant CASIS or its employees.

193.    Plaintiff did not lie regarding her name and did not misrepresent her name or marital status to Defendant CASIS.

194.    Plaintiff did not represent herself as a PhD level Scientist.

195.    Plaintiff did not receive $10,000 as well as travel and accommodation compensation from National Geographic for her participation in a podcast.

196.    Plaintiff did bring in projects of significant scientific value to Defendant CASIS.

197.    Defendant Vockley made the above-alleged statements knowing they were false or, in the alternative, with reckless disregard for the truth or falsity of such statements.

198.    Defendant Vockley made the above-alleged statements intentionally and deliberately and with malice and the intent of harming Plaintiff's personal and professional reputation.

199.    Defendant Vockley's above-alleged statements are false, malicious, defamatory, and slanderous, and moreover, were published with complete disregard to its harmful effect on Plaintiff's reputation in her profession.

200.    The defamatory statements made by Defendant Vockley were made in the course and scope of his employment relationship and/or agency relationship with Defendant CASIS, thus

making Defendant CASIS vicariously liable for any and all damages resulting from Defendant Vockley's tortious and defamatory conduct, in addition to Defendant CASIS being directly liable for the publication of false statements and for its failure to exercise due care to prevent the publication or utterance of such statements.

201.    Due to the overwhelming number of witnesses present at the meeting on January 8, 2019 who heard Defendant Vockley's defamatory statements about Plaintiff which were made on behalf of Defendant CASIS, Defendant CASIS caused substantial damage to Plaintiff by irreparably harming her professional reputation.

202.    As a direct and proximate result of Defendant CASIS allowing such conduct and defamatory action to occur, Plaintiff has suffered and continues to suffer damage, including, but not limited to, damage to her personal and professional reputation, embarrassment, pain, humiliation, mental anguish, and has sustained past and future loss of earnings.

203.    Defendant CASIS knew that Defendant Vockley's statements were false at the time the statements were made but nonetheless permitted him to make and/or publish the statements with an intent to cause ill will, hostility, and intent to harm, thus giving rise to the right to recover punitive damages in order to deter Defendant CASIS from engaging in such conduct in the future.

204.    As the statements made on behalf of Defendant CASIS are defamatory per se, injury to the Plaintiff is presumed as a matter of law.

WHEREFORE, Plaintiff demands judgment against Defendant CASIS for compensatory damages, costs, pre and post-judgment interest, punitive damages, and such other and further relief as the Court may deem appropriate under the circumstances.

### COUNT V
### TORTIOUS INTERFERENCE WITH A BUSINESS OR CONTRACTUAL RELATIONSHIP (AGAINST DEFENDANT KUEHNER)

205.    Plaintiff re-alleges paragraphs 1 through 149 as though fully set forth and incorporated herein.

206.    Plaintiff had an advantageous business relationship with Defendant CASIS.

207.    Plaintiff had an advantageous business relationship with National Geographic Society.

208.    Defendant Kuehner knowingly shared false information about Plaintiff to Defendant CASIS, including Defendant Vockley, as a means to disparage and ultimately have Plaintiff terminated from Defendant CASIS' employ.

209.    Defendant CASIS and Defendant Vockley either knowingly, or in reckless disregard, relied upon the false and tortious statements made about Plaintiff by Defendant Kuehner and supported Defendant Kuehner's recommendation that Plaintiff be terminated.

210.    As a result, Defendant Kuehner knowingly and intentionally interfered with Plaintiff's advantageous business relationship with Defendant CASIS.

211.    Defendant Kuehner knew or should have known that Plaintiff had an advantageous business relationship with Defendant CASIS.

212.    Defendant Kuehner knew or should have known that her actions would result in harm to Plaintiff's advantageous business relationship with Defendant CASIS

213.    Defendant Kuehner's acts constitute tortious interference with the business relationships that Plaintiff had with Defendant CASIS.

214.    Defendant Kuehner contacted representatives of the National Geographic Society about Plaintiff and made numerous false defamatory statements or innuendo about Plaintiff.

215.    As a result of Defendant Kuehner making false defamatory statements and/or innuendo about Plaintiff to the National Geographic Society, Plaintiff's advantageous business relationship with National Geographic Society has been harmed and Plaintiff has seldom been asked to continue work with the National Geographic Society.

216.    Defendant Kuehner knowingly and intentionally interfered with Plaintiff's advantageous business relationship with the National Geographic Society.

217.    Defendant Kuehner knew or should have known that Plaintiff had an advantageous business relationship with the National Geographic Society.

218.    Defendant Kuehner knew or should have known that her actions would harm Plaintiff's advantageous business relationship with the National Geographic Society.

219.    Defendant Kuehner's acts constitute tortious interference with the advantageous business relationship that Plaintiff had with the National Geographic Society.

220.    As a result of the tortious interference with business relationships, Plaintiff has suffered damages in the form of compensatory damages, humiliation, pain, anguish, loss of employment, loss of beneficial professional relationships, and damage to her professional reputation.

WHEREFORE Plaintiff demands judgment against Defendant Kuehner for compensatory damages, costs, pre and post-judgment interest and such other and further relief as the Court may deem appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


DATED this 16th day of October, 2020.

Respectfully submitted,


*s/ Nathan McCoy*
Paul L. Sutherland, Esq.
Florida Bar No. 1008093
Nathan McCoy, Esq.
Florida Bar No. 676101
WILSON MCCOY, P.A.
Point 100 Building,
100 E. Sybelia Ave, Ste. 205
Maitland, Florida 32751
Telephone: (407) 803-5400
Facsimile: (407) 803-4617
E-Mail:
psutherland@wilsonmmccoylaw.com
nmccoy@wilsonmccoylaw.com


**ATTORNEYS FOR PLAINTIFF**